| | |
|---|---|
| 1 | Alexis E. Danneman (SBA #030478) |
| | Joshua L. Boehm (SBA #033018) |
| 2 | PERKINS COIE LLP |
| | 2901 North Central Avenue, Suite 2000 |
| 3 | Phoenix, Arizona  85012-2788 |
| | Telephone:  602.351.8000 |
| 4 | Facsimile:  602.648.7000 |
| | ADanneman@perkinscoie.com |
| 5 | JBoehm@perkinscoie.com |
| | DocketPHX@perkinscoie.com |
| 6 | |
| | Kevin J. Hamilton (Wash. Bar #15648)* |
| 7 | KHamilton@perkinscoie.com |
| | Marc Erik Elias (D.C. Bar #442007)* |
| 8 | MElias@perkinscoie.com |
| | William B. Stafford (Wash. Bar #39849)* |
| 9 | WStafford@perkinscoie.com |
| | Sarah Langberg Schirack (Alaska Bar # 1505075)* |
| 10 | SSchirack@perkinscoie.com |
| | Ariel Glickman (Va. Bar #90751)* |
| 11 | AGlickman@perkinscoie.com |
| | PERKINS COIE LLP |
| 12 | 700 Thirteenth Street, N.W., Suite 800 |
| | Washington, DC 20005 |
| 13 | Telephone:  202.654.6200 |
| | Facsimile:  202.654.6211 |
| 14 | *Pro Hac Vice Application To Be Filed |
| 15 | Attorneys for Plaintiffs |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| 18 | The Arizona Democratic Party; The Democratic National Committee; DSCC, | No. |
| 19 | | |
| 20 | Plaintiffs, | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| 21 | v. | |
| 22 | Katie Hobbs, in her official capacity as Arizona Secretary of State; Edison Wauneka, in his official capacity as Apache County Recorder; David Stevens, in his official capacity as Cochise County Recorder; Patty Hansen, in her official capacity as Coconino County Recorder; Sadie Jo Bingham, in her official capacity as Gila County Recorder; Wendy John, in her official capacity as Graham County Recorder; Sharie Milheiro, in her official capacity as Greenlee County | |

Recorder; Richard Garcia, in his official capacity as La Paz County Recorder; Adrian Fontes, in his official capacity as Maricopa County Recorder; Kristi Blair, in her official capacity as Mohave County Recorder; Michael Sample, in his official capacity as Navajo County Recorder; F. Ann Rodriguez, in her official capacity as Pima County Recorder; Virginia Ross, in her official capacity as Pinal County Recorder; Suzanne Sainz, in her official capacity as Santa Cruz County Recorder; Leslie Hoffman, in her official capacity as Yavapai County Recorder; and Robyn Stallworth Pouquette, in her official capacity as Yuma County Recorder,

Defendants.

Plaintiffs the Arizona Democratic Party ("ADP"), the Democratic National Committee ("DNC"), and the DSCC (collectively, "Plaintiffs"), by and through their undersigned attorneys, file this Complaint for Injunctive and Declaratory Relief against Defendant Katie Hobbs, in her official capacity as the Secretary of State of the State of Arizona ("Secretary"); Edison Wauneka, in his official capacity as Apache County Recorder; David Stevens, in his official capacity as Cochise County Recorder; Patty Hansen, in her official capacity as Coconino County Recorder; Sadie Jo Bingham, in her official capacity as Gila County Recorder; Wendy John, in her official capacity as Graham County Recorder; Sharie Milheiro, in her official capacity as Greenlee County Recorder; Richard Garcia, in his official capacity as La Paz County Recorder; Adrian Fontes, in his official capacity as Maricopa County Recorder; Kristi Blair, in her official capacity as Mohave County Recorder; Michael Sample, in his official capacity as Navajo County Recorder; F. Ann Rodriguez, in her official capacity as Pima County Recorder; Virginia Ross, in her official capacity as Pinal County Recorder; Suzanne Sainz, in her official capacity as Santa Cruz County Recorder; Leslie Hoffman, in her official capacity as Yavapai County Recorder; and Robyn Stallworth Pouquette, in her official capacity as

Yuma County Recorder (collectively, "Defendants"). Upon information and belief, Plaintiffs allege the following:

**NATURE OF THE CASE**

1. The right to vote is "a fundamental matter in a free and democratic society." *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966) (citation and quotation marks omitted). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

2. Plaintiffs bring this lawsuit to protect this right and to prevent the disenfranchisement of thousands of Arizona voters, whose right to vote will be disenfranchised in the upcoming November 2020 general election (the "2020 General Election") by the failure of Arizona law to provide a cure opportunity for up to five days after election day ("Election Day") for otherwise valid mail ballots that have no signature (the "Inadequate Cure Period").

3. Arizonans have a right to vote by mail. A.R.S. § 16-541(A). Over the past decade, early voting by mail has grown exponentially in Arizona. In the 2008 general election, for example, just over a million Arizona voters cast their ballot by mail. By the 2016 general election, that number had doubled to over two million voters. In 2018, a lower-turnout midterm election, around 1.9 million voters voted by mail.

4. The number of mail ballots cast in the 2020 General Election also promises to be significant. Arizona is suffering the results of a highly infectious coronavirus, which causes the dangerous and sometimes deadly disease COVID-19. Considering this crisis, the Secretary has encouraged increased voting by mail.

5. Under Arizona's no excuse necessary absentee ballot system, any registered voter can cast a mail ballot. A.R.S. § 16-541. Arizona employs a system by which election officials verify that a given ballot was, indeed, cast by the voter in question by reviewing

-3-

the signature on the mail ballot envelope. And each general election cycle, thousands of mail ballots are rejected because election officials are unsure whether the voter signed the mail ballot envelope.

6. Arizona recognizes that this process of signature verification is fundamentally flawed; that is, that election officials will inadvertently reject mail ballots that were, in fact, cast by a registered voter. And so, it established a process by which some voters are provided the post-Election Day opportunity to "cure" this election official error by submitting proof that a voter did cast the ballot in question.

7. The problem under Arizona law that gives rise to this lawsuit is simple: In the upcoming 2020 General Election, not all mail ballots that are initially rejected will be treated equally regarding the ability of a voter to "cure" his or her ballot.

8. Voters whose signatures on their mail ballots do not match the signature in the voter's registration record are afforded an opportunity to correct their signature after Election Day, for up to five days. But voters whose mail ballots are rejected for missing signatures (a determination that the voter's signature, executed on the envelope containing the ballot, is missing) have no similar opportunity to cure their ballot after the election. If not remedied by 7 p.m. on Election Day, their votes are simply not counted. Voters who are in fact registered to vote, and who did in fact timely submit their mail ballots, will have their votes disregarded without due process.

**JURISDICTION AND VENUE**

9. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under the color of state law of rights secured by the U.S. Constitution.

10. This Court has jurisdiction to hear Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1357.

11. This Court has jurisdiction over the Secretary, as she is sued in her official capacity as an elected official in Arizona or Maricopa County. Further, the Secretary works or resides in the State of Arizona.

12. This Court has jurisdiction over Edison Wauneka, David Stevens, Patty Hansen, Sadie Jo Bingham, Wendy John, Sharie Milheiro, Richard Garcia, Adrian Fontes, Kristi Blair, Michael Sample, F. Ann Rodriguez, Virginia Ross, Suzanne Sainz, Leslie Hoffman, and Robyn Stallworth Pouquette, as they are sued in their official capacities as duly elected county recorders in the State of Arizona, and they work or reside in the State of Arizona.

13. Venue in this district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and in this division.

14. This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Further, this Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure.

**PARTIES**

15. Plaintiff ARIZONA DEMOCRATIC PARTY is a state committee, as defined by 52 U.S.C. § 30101. ADP's purpose is to elect candidates of the Democratic Party to public office throughout the State of Arizona. To accomplish this purpose, ADP engages in vitally important activities, including supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing efforts; protecting the legal rights of voters; and ensuring that all voters have the meaningful ability to cast ballots in Arizona, including mail ballots. ADP has members and constituents from across Arizona, including many voters who regularly support and vote for candidates affiliated with the Democratic Party.

16. The Inadequate Cure Period directly harms ADP. It is inevitable that Democrats, or those who would vote for Democrats, will not have their vote counted as a result of the Defendants' failure to allow voters to cure missing signatures after Election Day, thereby decreasing the overall likelihood that ADP will be successful in its mission to

help elect Democratic candidates to public office. Further, as part of its get-out-the vote ("GOTV") efforts, ADP engages in a robust mail voter contact program, informing thousands of voters statewide about their ability to cast mail ballots; the rules and deadlines surrounding vote by mail; and encouraging voters to utilize vote-by-mail. The Inadequate Cure Period decreases overall confidence in the mail voting process, generally, and as a result, directly undermines the efforts ADP takes to encourage voters to utilize mail voting and to assist them in exercising their right to vote.

17. In 2020, ADP is making significant expenditures to educate, register, mobilize, and turn out Democratic voters in Arizona. The Inadequate Cure Period directly harms the ADP because it burdens and disenfranchises the very voters the ADP seeks to support. As a result, the ADP has had to—and will continue to—expend and divert additional funds and resources that it would otherwise spend on other efforts to accomplish its mission in Arizona to combat the effects that Arizona's Inadequate Cure Period has on Democratic voters. For example, the ADP anticipates needing to focus additional educational resources on areas of Arizona with low English literacy rates. This is due to the heightened risk that voters in such areas will fail to understand mail ballot instructions, inadvertently mail the ballot without a signature, and be disenfranchised if their ballot is received with insufficient time to cure under the Inadequate Cure Period.

18. Further, ADP's members are directly harmed by the Inadequate Cure Period. As of April 1, 2020, there were nearly 1.3 million registered Democratic voters in Arizona, 32.5% of the total number of registered voters in Arizona (just over 3.9 million). In the 2016 and 2018 general elections, respectively, 2.0 million and 1.9 million Arizonans voted by mail ballot. And in Maricopa County alone, the county recorder rejected 1,856 unsigned mail ballots in the 2018 general election and 2,209 in the 2016 general election. Given that Democratic voters represent nearly a third of registered voters in Arizona, that millions of Arizonans vote by mail ballot, and that thousands of Arizonans have inadvertently failed to sign mail ballot envelopes in recent elections, it is virtually certain that at least some ADP

members will mail a ballot without a signature in 2020. These ADP members face an imminent threat of having their vote denied in 2020 due to the Inadequate Cure Period, and ADP is capable of obtaining relief for them without their individual participation. ADP brings this claim on its own behalf, as well on behalf of its members.

19. Plaintiff the DEMOCRATIC NATIONAL COMMITTEE is a national committee, as that term is defined and used by 52 U.S.C. § 30101, dedicated to electing local, state, and national candidates of the Democratic Party to public office throughout the United States. The DNC has constituents across the United States, including Democratic voters in Arizona. To accomplish its mission, among other things, the DNC works closely with Democratic public officials and assists state parties and candidates by contributing money; making expenditures for their benefit; and providing active support through the development of programs benefiting Democratic candidates.

20. The Inadequate Cure Period directly harms the DNC. It is inevitable that Democrats, or those who would vote for Democrats, will not have their vote counted as a result of the Defendants' failure to allow voters to cure missing signatures after Election Day. As a result, the Inadequate Cure Period decreases the likelihood that the DNC will be successful in its efforts to help elect candidates of the Democratic Party to public office. Arizona has a number of competitive Democratic races in the upcoming 2020 General Election and is a key state in the presidential contest; accordingly, it is critical to the DNC's mission that every Democratic vote be counted and that its constituents have an equal opportunity to cast their votes.

21. In 2020, the DNC anticipates making significant expenditures to educate, register, mobilize, and turn out voters in Arizona. The Inadequate Cure Period directly harms the DNC because it burdens and disenfranchises the very voters the DNC seeks to support. As a result, the DNC has had to—and will continue to—expend and divert additional funds and resources that it would otherwise spend on efforts to accomplish its mission in Arizona to combat the effects that the Inadequate Cure Period has on Democratic

1 voters.

2       22.     The DNC's constituents are directly harmed by the Inadequate Cure Period.
3 Given that Democratic Party voters represent nearly a third of the total registered voters in
4 Arizona, that millions of Arizonans vote by mail ballot, and that thousands of Arizonans
5 did not sign mail ballots in recent elections, it is virtually certain that at least some DNC
6 constituents will mail a ballot without a signature in 2020. These DNC constituents face an
7 imminent threat of having their vote denied in 2020 due to the Inadequate Cure Period, and
8 the DNC is capable of obtaining relief for them without their individual participation. The
9 DNC brings this claim on its own behalf, as well on behalf of its constituents.

10       23.     Plaintiff DSCC is the national senatorial committee of the Democratic Party,
11 as defined by 52 U.S.C. § 30101(14), and its mission is to elect Democratic candidates to
12 the U.S. Senate, including in Arizona. The DSCC works to accomplish its mission in
13 Arizona and across the country by, among other things, making expenditures for, and
14 contributions to, Democratic candidates for U.S. Senate. It also assists state parties
15 throughout the country, including in Arizona, by providing financial support to state parties
16 to support coordinated campaign activities that further shared interest in electing
17 Democratic candidates for U.S. Senate. In 2018, the DSCC made contributions and
18 expenditures in the tens of millions of dollars to persuade and mobilize voters to support
19 Democratic Senate candidates, including money spent in Arizona. In 2020, the DSCC again
20 has made and expects to continue to make substantial contributions and expenditures to
21 support the Democratic candidate for U.S. Senate in Arizona.

22       24.     The Inadequate Cure Period directly harms the DSCC. It is inevitable that
23 Democrats, or those who would vote for Democrats, will not have their vote counted as a
24 result of the Defendants' failure to allow voters to cure missing signatures after Election
25 Day. Further, the DSCC is aware of the Inadequate Cure Period and will have to expend
26 and divert additional funds and resources on voter persuasion efforts and other activities in
27 Arizona, at the expense of its efforts in other states, in order to combat the effects of the

Inadequate Cure Period in the 2020 General Election for U.S. Senate in Arizona. This frustrates the DSCC's mission of, and efforts in, electing the Democratic candidate to the U.S. Senate in Arizona and other Democratic candidates to the U.S. Senate nationwide.

25. The DSCC's members and constituents are directly harmed by the Inadequate Cure Period. Given that Democratic Party voters represent nearly a third of the total registered voters in Arizona, that millions of Arizonans vote by mail ballot, and that thousands of Arizonans didn't sign mail ballots in recent elections, it is virtually certain that some DSCC members and constituents will mail a ballot without a signature in 2020. These DSCC members and constituents face an imminent threat of having their vote denied in 2020 due to the Inadequate Cure Period, and the DSCC can obtain relief for them without their individual participation. The DSCC brings this claim on its own behalf, as well on behalf of its members and constituents.

26. Defendant Katie Hobbs is the Secretary of State for the State of Arizona and is the Chief Elections Officer for Arizona. A.R.S. § 16-142. As Arizona's Chief Elections Officer, the Secretary is responsible for overseeing the voting process in Arizona and is empowered with broad authority to carry out that responsibility. She is also responsible for prescribing rules related to procedures for, among other things, mail ballots, which are set forth in the Arizona Election Procedures Manual ("Manual"). A.R.S. § 16-452. The Secretary is sued in her official capacity for actions taken under color of state law.

27. Defendant Edison Wauneka is the duly elected Apache County Recorder and is named as a defendant in this action solely in his official capacity.

28. Defendant David Stevens is the duly elected Cochise County Recorder and is named as a defendant in this action solely in his official capacity.

29. Defendant Patty Hansen is the duly elected Coconino County Recorder and is named as a defendant in this action solely in her official capacity.

30. Defendant Sadie Jo Bingham is the duly elected Gila County Recorder and is named as a defendant in this action solely in her official capacity.

31. Defendant Wendy John is the duly elected Graham County Recorder and is named as a defendant in this action solely in her official capacity.

32. Defendant Sharie Milheiro is the duly elected Greenlee County Recorder and is named as a defendant in this action solely in her official capacity.

33. Defendant Richard Garcia is the duly elected La Paz County Recorder and is named as a defendant in this action solely in his official capacity.

34. Defendant Adrian Fontes is the duly elected Maricopa County Recorder and is named as a defendant in this action solely in his official capacity.

35. Defendant Kristi Blair is the duly elected Mohave County Recorder and is named as a defendant in this action solely in her official capacity.

36. Defendant Michael Sample is the duly elected Navajo County Recorder and is named as a defendant in this action solely in his official capacity.

37. Defendant F. Ann Rodriguez is the duly elected Pima County Recorder and is named as a defendant in this action solely in her official capacity.

38. Defendant Virginia Ross is the duly elected Pinal County Recorder and is named as a defendant in this action solely in her official capacity.

39. Defendant Suzanne Sainz is the duly elected Santa Cruz County Recorder and is named as a defendant in this action solely in her official capacity.

40. Defendant Leslie Hoffman is the duly elected Yavapai County Recorder and is named as a defendant in this action solely in her official capacity.

41. Defendant Robyn Stallworth Pouquette is the duly elected Yuma County Recorder and is named as a defendant in this action solely in her official capacity.

**STATEMENT OF FACTS**

42. Under Arizona's no excuse absentee ballot system, any registered voter can cast a mail ballot. A.R.S. §16-541. Arizona employs a system by which election officials verify that a given ballot was, indeed, cast by the voter in question by reviewing the signature on the mail ballot envelope. *See* A.R.S. §16-548 ("The early voter shall make and

1  sign the affidavit and shall then mark his ballot in such a manner that his vote cannot be
2  seen.").

3       43.    To verify the voter, signatures are reviewed by the "county recorder or other
4  officer in charge of elections." A.R.S. § 16-550(A). Specifically, in evaluating mail ballots,
5  Arizona law requires that "the county recorder or other officer in charge of elections shall
6  compare the signatures thereon with the signature of the elector on the elector's registration
7  record." *Id.*

8       44.    Using signature "matching" to verify voter identity is an inherently dubious
9  process. Election officials are not handwriting experts, and the simple fact is that signatures
10  change all the time for any number of reasons.

11       45.    Effective August 27, 2019, perhaps in recognition of the fact that the signature
12  verification process invariably disenfranchises lawful voters, the legislature amended
13  A.R.S. § 16-550(A) to include a cure period for signature mismatches in mail ballots. The
14  statute provides that "[i]f the signature is inconsistent with the elector's signature on the
15  elector's registration record, the county recorder or other officer in charge of elections shall
16  make reasonable efforts to contact the voter, advise the voter of the inconsistent signature,
17  and allow the voter to correct or the county to confirm the inconsistent signature." *Id.*

18       46.    As to those mail-in ballots where an election official determines that the
19  signatures do not "match," "[t]he county recorder or other officer in charge of elections
20  shall allow signatures to be corrected not later than the fifth business day after a primary,
21  general or special election that includes a federal office or the third business day after any
22  other election" (the "Signature Mismatch Cure Period"). *Id.*

23       47.    The statute does not provide that a voter may similarly be permitted to correct
24  or confirm a missing signature. It is silent on cure periods for missing signatures.

25       48.    But the current version of the Elections Procedures Manual, which was
26  approved by the Governor and Attorney General in December 2019, as required by statute,
27  A.R.S. § 16-452(B) (the "Manual"), does address this issue. And it does so in a way that

-11-

1  treats missing signatures arbitrarily different from mismatched signatures.

2       49.    According to the Manual, "[i]f the early ballot affidavit is not signed, the County Recorder shall not count the ballot." Unlike the Signature Mismatch Cure Period, which extends for five days after Election Day, the Manual only requires the County Recorder to make a "reasonable and meaningful attempt to contact the voter" and explain how the missing signature can be cured "before 7:00pm on Election Day." *Id.*

     50.    Accordingly, Arizona law does not provide a cure period for missing signatures following Election Day, as exists with the five-day Signature Mismatch Cure Period.

     51.    This will result in disenfranchisement. In recent general elections, a significant number of mail ballots have been rejected in Arizona for missing signatures.

     52.    For example, in the Arizona general elections from 2008 to 2018, Maricopa County election officials alone rejected a total of 18,420 mail ballots because they had missing signatures.

     53.    Specifically, in Maricopa County the following number of mail ballots were rejected for having "no signature": 1,856 in the 2018 general election; 2,209 in the 2016 general election; 3,749 in the 2014 general election; 4,610 in the 2012 general election; 3,352 in the 2010 general election; and 2,644 in the 2008 general election.

     54.    Other counties in Arizona have rejected mail ballots based on a voter's failure to sign, as well. For example, in Pinal County, 131 ballots were rejected for missing signatures, or similar reasons, during the 2018 general election.

     55.    Eligible Democratic voters will inevitably submit unsigned mail ballots in the 2020 General Election, too, whether for a simple oversight or inability to understand the instructions. County recorders will inevitably receive some of those ballots on or shortly before Election Day, when the Inadequate Cure Period would provide no or insufficient time for those recorders to make reasonable efforts to contact the voter and cure the ballot.

     56.    This is particularly true under present conditions, where the United States

Postal Service ("USPS") is facing serious funding shortfalls and significant challenges timely delivering mail given complications due to the ongoing global pandemic. Simply put, voters who timely submit their mail ballot may, through the vagaries of mail delivery that are entirely outside their control, be deprived of a meaningful opportunity to prove their identity to election officials and have their vote counted.

57. To the extent the cure process must be conducted via physical mail, the State's failure to provide a post-Election Day cure period for unsigned ballots further heightens the likelihood of wrongful disenfranchisement due to the unpredictability and lag time in sending and receiving physical mail. This could happen where, for instance, the county recorder only has a voter's mailing address (but not a phone number) on file, or where a voter must obtain and submit a new ballot by mail.

58. It would impose little to no administrative burden to extend the Signature Mismatch Cure Period to voters whose mail ballots lack signatures. That this is true is evidenced by the fact that the State is already providing a post-Election Day cure period to other voters whose signatures do not match.

# COUNT I

**(Undue Burden on the Right to Vote in Violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment)**

59. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

60. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

61. The court "must weigh 'the character and magnitude of the asserted injury to

the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

62. The practices outlined above impose a severe burden—disenfranchisement—on the right to vote. The Inadequate Cure Period does not serve any legitimate, let alone compelling, state interest. The State already has a similar cure process in place for other mail ballots. This means that election results will not be finalized during the cure period anyway. And as the State can contact many voters through simple measures such as phone calls, texts, and email, the cost of extending this cure process to additional voters is marginal, particularly when balanced against the harm caused by complete disenfranchisement.

63. Many Arizona voters will suffer direct and irreparable injury if Defendants refuse to allow them an opportunity to cure the rejection of their mail ballots without signatures after Election Day. Without relief from this court, these voters will be deprived of their right to vote in the 2020 General Election.

## COUNT II

**(Denial of Procedural Due Process in Violation of the Fourteenth Amendment)**

64. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

65. A procedural due process claim under the Due Process Clause of the Fourteenth Amendment requires "(1) a deprivation of a constitutionally protected liberty . . . interest, and (2) a denial of adequate procedural protections." *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018). If there is a constitutionally protected liberty interest at stake, a court must then determine the adequacy of procedural protections by examining "'first, the private interest that will be affected by the official action; second, the risk of an

erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).

66. Because Arizona law allows fundamental voting rights to be exercised by mail, there is a constitutionally protected liberty interest in mail voting that Defendants may not deprive without adequate procedures. The nature of the private interest at stake in this case—the right to vote and to have that vote count—is the most precious liberty interest of all because it is preservative of all other basic civil and political rights.

67. It is virtually certain that the Inadequate Cure Period, by failing to allow unsigned ballots to be cured after Election Day, will erroneously deprive some eligible Democratic voters of this liberty interest. Additional procedural safeguards for missing signatures—namely, the same five-day post-Election Day cure period that exists for mismatched signatures—would be immensely valuable in safeguarding against that deprivation.

68. Providing an additional cure process for unsigned mail ballots would create little to no additional fiscal or administrative burden, since the State already has the same cure process in place for other mail ballots. This additional cure process for unsigned mail ballots would also promote the State's interest in ensuring that eligible voters are not wrongly disenfranchised.

69. Many Arizona voters will suffer direct and irreparable injury if Defendants refuse to allow them an opportunity to cure the rejection of their mail ballots without signatures after Election Day. Without relief from this Court, these voters will be deprived of their right to vote in the 2020 General Election.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that all voters who submit a ballot without a signature must be allowed the same opportunity to cure that defect as is allowed to voters who submit a mail ballot with a signature mismatch; specifically, voters must be allowed to correct missing signatures until the fifth business day after a primary, general, or special election that includes a federal office or the third business day after any other election.

B. Preliminarily and permanently enjoining enforcement by Defendants of any source of state law that requires election officials to reject mail ballots with no signature without offering the voter the opportunity to correct the ballot until the fifth business day after a primary, general, or special election that includes a federal office or the third business day after any other election.

C. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

D. Granting such other and further relief as the Court deems just and proper.

Dated:  June 10, 2020                **PERKINS COIE LLP**

By: */s/ Alexis E. Danneman*
       Alexis E. Danneman
       Joshua L. Boehm

148402177.8